WALTER D. OLIVER *et al.* Appellants, *vs.* DAVID SATTLER, Appellee.

*Opinion filed April 23, 1908.*

1. PRINCIPAL AND AGENT—*what is not admissible to show that purchaser was ready and able to buy.* In an action brought by a real estate agent for commissions after the defendant refused to sell to the person named in the contract of sale made by the agent, proof that the person who was to be the real purchaser was ready and able to buy and that certain unauthorized options given by the contract with reference to deferred payments were immaterial to him is not admissible, where such person was not named in the contract nor his connection with the transaction made known to the defendant until the trial.

2. SAME—*what must be shown by a real estate agent to entitle him to recover commissions.* To entitle a real estate agent to recover commissions when the owner has refused to carry out the contract of sale made by the agent, the agent must prove that he produced, within the time limited by the authority, a purchaser ready, willing and able to perform the contract, and that the contract was in accordance with the authority given and the terms prescribed.

3. SAME—*contract itself is the only legitimate evidence as to whether it is within the agent's authority.* The written contract of sale made by a real estate agent is the only legitimate evidence to show that the contract is within the authority given and the terms prescribed by the letter authorizing the agent to act, and the question whether the contract is within the authority is one of law.

4. SAME—*when contract is not within the terms of agent's authority.* A contract of sale made by a real estate agent giving the proposed purchaser an option to pay the deferred payments *on or before* the dates which were fixed by the agent's written authority is not within the authority conferred, since the purchaser would have a right, under the contract, to pay the entire purchase money at any time after delivery of the deed. (*Smith* v. *Keeler,* 151 Ill. 518, distinguished.)

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

TODD & MORRISON, for appellants.

ROSENTHAL & HAMILL, (CHARLES GOODMAN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, under the name of Oliver & Co., are real estate brokers in the city of Chicago. On March 19, 1906, the appellee, David Sattler, gave to them the following written authority to sell the real estate owned by him therein described:                          *"March 19, 1906.*

*"Mess. Oliver & Co., 110 Dearborn St., Chicago.*

"DEAR SIRS—You are hereby authorized to sell my State street property, Nos. 1606-1608, otherwise described as lot 4, block 1, in canal trustees' new sub. of the south-east frac. quarter section 21, township 39 north, range 14, east of 3d P. M., being 50x150 feet in dimensions, at the price of $50,000, payable one-fourth in cash, balance one, two and three years, at five per cent interest. In case of a sale at this price I agree to pay you the sum of $1500 for your services. This authority is good for one week from date hereof.

"Yours truly,                    DAVID SATTLER."

On March 21 or 22 Lawrence Heyworth told Oliver & Co. that he would take the property at $50,000 but did not want his name known in the transaction. A draft of a contract of sale was prepared, in which Sprague Moore, an employee of Oliver & Co., was named as the purchaser. On March 22 another employee of Oliver & Co. wrote Sattler that he would call on him the next day with the contract of sale for him to sign. On March 23 the draft of the contract was delivered to Sattler, who said that he would take it to his lawyer and see what he said about it. Sattler did not communicate with Oliver & Co., and on the next day they entered into a contract with George F. Mahler, chief janitor of the Heyworth building, at the suggestion of Lawrence Heyworth, the real purchaser. This contract was substantially the same as the previous one, and it was signed with the name of Sattler, by Oliver & Co. as his agents. Sattler was not in Chicago for a few days, and on his re-

turn he wrote Oliver & Co., on March 27, saying that the
draft of the contract submitted to him was objectionable,
and among other things stated that it was not in accordance
with the terms of sale named in the authority and that the
sale was not *bona fide,* since Moore was an employee of Oli-
ver & Co. and they were not authorized to sell to themselves.
On March 28 Oliver & Co. wrote Sattler that by virtue of
the authority given them they had executed a contract of
sale to George F. Mahler and the same had been put on
record.   On March 31 James Todd, an attorney at law,
wrote Sattler that his client, George F. Mahler, had pur-
chased the property and stood ready and willing to carry
out his part of the contract.   The real purchaser and client
of Todd was Lawrence Heyworth, and he was never known
in the transaction.   The contract of sale was very lengthy
and contained numerous provisions, some of which related
to furnishing a complete merchantable abstract of title or a
merchantable guaranty title policy, to be furnished within
a reasonable time, and for curing any defects that might be
found within sixty days.   It provided that in case of default
by the purchaser the earnest money, at the option of the
vendor, might be retained as liquidated damages and the
contract become null and void.   The contract recited that
the purchaser had deposited $2000 as earnest money, but no
money was, in fact, paid, and the $2000 was charged to the
account of Heyworth on the books of Oliver & Co. and on
October 12, 1906, was credited back.   The payments pro-
vided for were $10,500 within five days after the title had
been examined and found good or accepted by Mahler, and
the balance was payable, in equal installments of $12,500
each, on or before one year, on or before two years and on
or before three years from the date of the delivery of the
deed, with interest from the date of the delivery of the deed
at the rate of five per cent per annum, payable semi-annu-
ally, and the deferred payments were to be secured by notes,
with a mortgage or trust deed on the premises.   Sattler re-

fused to carry out the contract, and Oliver & Co. brought this suit in the superior court of Cook county in assumpsit against him to recover their commission of $1500 according to the terms of the contract. A jury having been waived, the issues were tried by the court, and resulted in a finding and judgment for Oliver & Co. for $1500 and costs. An appeal was taken to the Appellate Court for the First District, and the case was assigned to the branch of that court, where the judgment was reversed and the cause was not remanded. The court incorporated in the judgment the following finding of facts: "The court finds as a fact that the letter of authority from defendant, Sattler, to the plaintiffs, Oliver & Co., dated March 19, 1906, and in evidence in this case, did not give the plaintiffs authority to make for defendant the contract they assumed, as agents of the defendant, to make for him with George F. Mahler, March 24, 1906, also in evidence in this case; that said alleged contract was not the contract of the defendant nor binding upon him, and that plaintiffs did not, under or pursuant to the authority given them by the defendant in and by said letter of authority, sell for the defendant, as his agent, the land therein described, either to George F. Mahler or Lawrence Heyworth." Oliver & Co. prosecuted this appeal from the judgment of the Appellate Court.

Appellants are not permitted to assign for error that any finding of fact incorporated in the judgment of the Appellate Court upon a final determination of the case, different from the finding of the trial court, is incorrect, but they contend that the alleged findings of fact in this case are not findings on questions of fact but are matters of legal interpretation. They say that the meaning and effect of the written authority given by the appellee, and the question whether the written contract was within that authority, are questions of law, and the finding that the written authority did not confer power to make the contract resulted from the legal interpretation of the documents and is not a find-

ing of fact. There were controverted questions of fact at the trial, where appellants contended that they were entitled to their commissions when they found a purchaser ready, able and willing to purchase the property mentioned in the written authority upon the terms therein stated; that they found such a purchaser; that the appellee absented himself from the city and kept away in order to defeat a sale, and that the contract was only an evidentiary fact of having secured such a purchaser. They claimed that the incidental matters mentioned in the contract, varying from the authority, were not such deviations as would defeat their claim for commissions, and the court permitted Heyworth to testify that the option to pay on or before was a matter of no consequence to him. This was for the purpose of showing that he would have taken the property without that option. But the question in this case was not what the appellants could have done, but what they did. (*McGavock* v. *Woodlief,* 21 How. 221.) The appellee never knew that Heyworth had any connection with the transaction until the trial of the case, and the court erred in admitting testimony as to his ability to carry out the contract and the fact that the option clause was immaterial to him. To entitle appellants to recover it was necessary for them to prove that they produced, within the time limited by the authority, a purchaser upon the terms therein stated. If they had done that and appellee refused to perform the contract their right to commissions would not be defeated, but if they had not done that there was no liability for commissions, because they had not done what they undertook to do. It was incumbent on them to show that the purchaser was ready, willing and able to perform the contract, and that it was in accordance with the authority given and the terms prescribed. (*Wilson* v. *Mason,* 158 Ill. 304.) The only legitimate evidence on the subject is the written contract, and the question whether it was within the written authority conferred is one of law. The findings of the Appellate Court incorporated in the

judgment were doubtless designed to meet the claims of appellants made on the trial, but whether the findings relate to matters of fact which appellants cannot dispute, or to matters of law which they are entitled to question, we regard the judgment of the Appellate Court as correct.

Without considering other stipulations of the contract which are claimed to be deviations from the authority, we regard it as clear that the payments to be made by Mahler were not within the terms prescribed by the appellee. The authority given was to sell the property for $50,000, payable one-fourth in cash and the balance in one, two and three years, with five per cent interest. The contract recited a deposit of $2000, and Mahler agreed to pay $10,500 within five days after the title should be examined and found good or accepted by him, and he had an option to pay the deferred payments on or before the dates fixed in the authority. Under the contract Mahler could have paid the whole purchase money at any time after the delivery of the deed. In the case of *Hoyt* v. *Shipherd,* 70 Ill. 309, the authority was to sell for one-third cash in hand and the agents sold the property for the required price, one-third to be paid in twenty days, without interest. It was held that the agents were not authorized to give any time, and their doing so was one of the grounds on which it was decided that there could be no recovery. In *Monson* v. *Kill,* 144 Ill. 248, the authority was to sell for $12,000, of which $6000 was to be paid in cash and the balance in one, two and three years, with six per cent interest, and it was held that the owner had the right to prescribe for what his land should be sold, and having done so the authority must be followed, and that there was no authority to make the payments on or before the times fixed, at the option of the purchaser. In *Smith* v. *Keeler,* 151 Ill. 518, relied upon by appellants, Keeler had for many years employed Smith to make sales for him, and he had made such sales for part cash and part on time. In the sale then in question the authority was to

sell for part cash and part on time, without any direction as to the portion of the purchase money to be paid in cash. It was considered a fair inference that the agent was vested with reasonable discretion in that respect, but the final decision rested on the fact that when Smith was informed that the agent had found a purchaser and made a sale, he did not question the fact of the sale or the terms, but declined to carry out the contract solely because he had received a better offer and had concluded not to sell at all. In this case the contract was not within the terms of the authority and the objection was made by appellee, which makes the case a very different one.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*