## T. M. Lee, Appellee, v. Samuel T. Moore, Appellant.

1. BROKERS AND FACTORS—*when real estate agent not entitled to commissions.* A real estate agent cannot recover commissions unless he establishes by a preponderance of the evidence that he produced a purchaser ready, willing and able to purchase the property of the defendant upon terms satisfactory to him.

2. EVIDENCE—*what not admission of liability.* For a defendant to say that he is not going to appeal but is going to pay a judgment is not to admit liability; and it is error to permit evidence of such statements to be introduced.

Action commenced before justice of the peace. Appeal from the Circuit Court of Schuyler county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the November term, 1910. Reversed and remanded. Opinion filed June 2, 1911.

GLASS & BOTTENBERG and B. O. WILLARD, for appellant.

L. A. JARMAN, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action originally brought before a justice of the peace for the recovery of a sum alleged to be due from the defendant to the plaintiff, for services as broker in negotiating a sale of real estate. The plaintiff recovered judgment in the Circuit Court for $175, from which the defendant appealed. The material facts, briefly stated, are the following:

In September, 1908, the defendant employed the plaintiff to sell or find a purchaser for his farm of 175 acres, at $50 an acre, and agreed to pay him a commission of $1 an acre as his compensation. Nothing was said as to the terms or time of payment of the purchase price. On or about March 25, 1909, the plaintiff presented one Harmon to the defendant as a possible purchaser of the farm. The defendant then stated that the price was $50 an acre, $1,000 to be paid

in cash and the balance to be secured by mortgage upon the farm, and that possession would be given the following March. Harmon replied that the terms were satisfactory and that he would take the farm, but before closing the deal would like to have his wife look at it. Harmon testified that on the following Saturday, before the arrival of his wife, the defendant in a conversation with Harmon, in a blacksmith shop at Randolph, told him that the plaintiff was asking too much for the farm and that he would let him have it for $350 less, if he would wait until he, the defendant, got it out of the plaintiff's hands. This is denied by the defendant. On March 26th, the defendant wrote a letter to Harmon in part as follows: "Be sure to see me before making any bargain for place as there are some things to be considered in trade. Might be to your interest."

About a week thereafter, the defendant notified the plaintiff that he had concluded to take the farm off the market. On the following day, Harmon notified the plaintiff that he was ready to close the deal, and at the same time the plaintiff notified the defendant that he expected his commission. On the next day, Harmon again offered to carry out the contract, stating that he would pay the defendant $2,000, and secure the balance by note and mortgage, but the defendant insisted upon having all in cash. A short time thereafter the defendant, by Mourning, his attorney, proposed to Harmon that if he would pay $2,700 in cash, he, Mourning, would furnish him the balance. Negotiations were continued between Harmon and Mourning, but no definite terms were agreed upon which were acceptable to the defendant. The defendant thereafter declined to negotiate further. Prior to this time, the defendant had entered into a contract with one Vanorder to sell him the farm for $8,600, payable $1,000 the following March, and the balance to be secured by mortgage, but it does not appear that such sale was ever consummated.

We are of opinion that the evidence fails to show that the plaintiff furnished a buyer for the farm under the terms of his contract of employment. In order to recover, it was necessary that he should present to the defendant a customer who was ready, willing and able to purchase the farm at the price of $50 per acre. Nothing having been said as to the time and manner of payment, it must be implied in law that the same was to be made in cash at the time of conveyance, or at such time or times and upon such terms as were satisfactory to the defendant. The evidence, from the most favorable view to the plaintiff, fails to show that up to the time the defendant took the property out of the plaintiff's hands, Harmon and the defendant had ever reached a final definite agreement as to the terms of payment. The plaintiff, therefore, must recover, if at all, upon the theory that the consummation of a sale to Harmon was prevented by the fraud, bad faith, procurement or fault of the defendant, or that the defendant fraudulently revoked the agency of the plaintiff to prevent him from earning his commissions. In support of such view the plaintiff relies largely, in argument, upon Harmon's version of the conversation at the blacksmith shop, and the letter, above quoted, from the defendant to Harmon. We think the defendant's version of the conversation the more reasonable. It seems improbable that in order to avoid the payment of $175 as commissions the defendant should offer the property for $350 less than Harmon was then seemingly willing to pay for it. Neither the alleged suggestion in the conversation, nor the letter, nor the revocation of the plaintiff's agency, seems to have had the effect of discouraging Harmon in his efforts to secure the property. His failure to do so was apparently due to the inability of the parties to agree upon terms as to deferred payments. As has been said, under the terms of the contract of agency, it was essential that the purchaser produced should be ready, willing and able to purchase upon terms satisfactory

to the defendant. The defendant had the unquestioned right to fix the terms, and his refusal to accept those offered by Harmon cannot be said to constitute bad faith on his part. We are not satisfied that the jury was warranted in finding that the preponderance of the evidence showed that the defendant was guilty of either fraud or bad faith.

The trial court permitted Frank Miller, a witness called by the plaintiff, to testify, in substance, that after the trial in the justice court, the defendant, who had there been unsuccessful, stated that he was not going to appeal the case; that he was going to pay the judgment. Such statement, if made, did not tend to impeach the defendant, nor was it an admission of liability. The admission of the same in evidence was improper. We find no error in the other rulings of the court of which complaint is made.

For the reasons stated the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*