Joseph Greenwald, Appellee, v. Michael D. Marcus, Appellant.

**Gen. No. 46,355.**

Opinion filed October 19, 1954. Rehearing denied November 16, 1954. Released for publication January 4, 1955.

GALE L. MARCUS, of Chicago, for appellant.

JEROME LERNER, of Chicago, for appellee.

Mr. Presiding Justice Schwartz delivered the opinion of the court.

Plaintiff, a licensed real estate broker, obtained a verdict and judgment for $1,500 for his services in procuring a buyer for certain property offered for sale by defendant. Defendant appeals from the judgment and contends principally that plaintiff has not sustained his burden of proving a contract of employment or performance. There is ample evidence to sustain the verdict and, therefore, in the area where the facts are in controversy between plaintiff and defendant, we have adopted the version of plaintiff.

It appears that in March 1952 plaintiff had a conversation with defendant, in which defendant asked him to find a buyer for a building on the premises known as 25 North Bishop street, Chicago. Defendant stated that the purchase price was $80,000 provided the purchaser made a down payment of $10,000, or $70,000 if the purchaser made a down payment of $20,000. Defendant promised to pay plaintiff a full commission of five per cent. Plaintiff produced a prospective purchaser, Ticktin, who agreed to pay $80,000 and to make a cash payment of $10,000. Defendant and Ticktin prepared a written offer in which it was recited that defendant was the owner of the property; that the purchase price was $80,000; that the purchaser had deposited $1,500 as earnest money, and would pay an additional cash deposit of $8,500 upon closing of the deal; and that the balance would be paid at the rate of $700 per month. This offer was signed by the purchaser, who deposited $1,500 escrow money. A figure of $2,000 was inserted by defendant as representing a broker's commission. Ticktin also added the words "no personal liability." The following day, plaintiff produced another prospective purchaser, Rochester, who agreed with defendant to pay $70,000 for the property and to make a down payment of $20,000. An offer to

buy was typed by defendant's secretary, which also recited that defendant was the owner of the property; that the purchase price was $70,000; that earnest money of $2,000 had been deposited; that $18,000 additional would be paid on closing and the balance at the rate of $600 per month, including principal and interest. This offer contained a provision for payment of a broker's commission of $3,500. It was signed by Rochester and delivered to defendant. Following submission of these offers, plaintiff and defendant had a conversation at defendant's office. There, according to defendant himself, he told plaintiff that he "very much wanted to sell this building and [was] trying to work it out"; that the maximum commission plaintiff could get, however, would be $2,000, of which $500 would have to go to one Baxter, manager of the building. According to defendant, he also told plaintiff he would have to convince his partners to agree to the deal. The latter statement is vigorously denied by plaintiff. Defendant testified that he induced plaintiff to sign a piece of paper in which he agreed to give Baxter $500, leaving plaintiff $1,500, which accounts for the amount of the verdict. Subsequently, defendant returned the earnest money which had been deposited by the prospective purchasers, stating he could not get his partners to agree to the deal. He testified that he would have conveyed to Ticktin if he had been able to buy out his partners' interests, and that was the only ground on which he based his failure to go through with the deal.

An issue of fact was created principally on the question of whether plaintiff's commission was conditioned upon his getting an offer which would be acceptable not only to defendant, but to partners he alleges he had in the property. According to plaintiff, nothing was said about these partners and defendant represented himself as the owner. Plaintiff is supported in

this not only by his own testimony but by the fact that in the preparation of the written offers, defendant described himself as the sole owner. This was an issue for the jury, and the evidence amply sustains its verdict in favor of plaintiff.

Defendant also argues that plaintiff did not prove a contract of employment. Plaintiff does not contend that he was given an exclusive right to sell the property for a given period of time. All he contends is that he was requested to find a buyer upon terms outlined by defendant and that he did produce buyers who were acceptable to defendant.

██ No particular form of words is necessary to engage the services of a real estate broker (*Purgett v. Weinrank*, 219 Ill. App. 28, 30 (1920)), although a mere statement to a broker of the price at which the owner will sell is not of itself sufficient to imply a "contract of employment." *Bunn v. Smith*, 190 Ill. App. 530 (1914); *Morton v. Barney*, 140 Ill. App. 333 (1908). What is necessary is that the broker act with the consent of the principal, whether such consent be given by written instrument, orally, or by implication from the conduct of the parties. *O'Dea v. Throm*, 250 Ill. App. 577, 582 (1928), citing 9 C. J. 516. The evidence on the point amply supports the verdict of the jury.

██ With respect to performance, defendant seems to rely on two general propositions: first, that the buyer Ticktin was not proven able to buy the property in question; and second, that the inclusion in the offer to buy of the words "no personal liability" on the part of Ticktin differed materially from the terms stipulated by the seller and disclosed great doubt as to his ability to perform. It is true that an agent generally must prove that the prospective buyer was ready, willing, and able to buy at the price fixed. *Wilson v. Mason*, 158 Ill. 304, 42 N. E. 134 (1895); *Hanrahan v. Ulrich*, 107 Ill. App. 626 (1903); *Pratt v. Hotchkiss*, 10

Ill. App. 603 (1882). Where the property is actually sold, however, the fact that the owner himself contracted with the buyer is taken as conclusive on the acceptability of the buyer as a purchaser ready, willing, and able to buy. *Schlegel v. Fuller,* 48 Okla. 134, 149 Pac. 1118, 1119 (1915). A similar distinction is made where the purchaser is approved by the seller. *Glatt v. Adams,* 226 Ill. App. 321 (1922); *Levit v. Bowers,* 2 Ill.App.2d 343, 119 N.E.2d 536 (1954); *Davis v. Morgan,* 96 Ga. 518, 23 S. E. 417 (1895). This does not mean that a vendor is required to accept a purchaser without an opportunity to investigate his ability to comply with the terms of the contract. It means that where that opportunity is had or waived and the vendor has manifested his approval of the purchaser, then he may no longer object to the readiness, willingness or ability of the purchaser to buy. The principle is cited and approved by Floyd R. Mechem, noted authority on the law of agency, in his article "The Real Estate Broker and His Commission," 6 Ill. L. Rev. 149 (1911), where the author states:

"The principal may [manifest his approval of a purchaser by consummating the sale and] also, by words or conduct, accept the buyer produced as one satisfactory to him, and if he does so the broker has earned his commission, although the later negotiations between the parties never even ripen into a binding contract, to say nothing of an actual conveyance."

Cited are *Davis v. Morgan, supra; Sayre v. Wilson,* 86 Ala. 151, 5 So. 157 (1888); and *Krahner v. Heilman,* 16 Daly (N. Y.) 132.

Defendant cites the case of *Lee v. Moore,* 161 Ill. App. 643 (1911). A decision for the vendor and against the broker was made on the ground that the purchaser

and not the seller, as here, refused to commit himself to the deal until his wife saw the property. In other words, the purchaser was not willing or ready to buy. Before acceptance was finally tendered, the vendor had revoked the broker's authority.

■ The fact that the vendor Marcus released Ticktin from his obligation and his earnest money deposit does not affect the broker's commission rights. *Packer v. Sheppard,* 127 Ill. App. 598, 601 (1906).

■ In the instant case, defendant and the prospective purchasers prepared written offers for the property which the purchasers signed, and in each instance they deposited earnest money. This is evidence that the seller was satisfied with the offers insofar as the escrow money assured him of consummation of the deal. It is not conclusive evidence under our Illinois decisions (*Smith v. Penn,* 151 Ill. App. 155 (1909); *Lawrence v. Rhodes,* 188 Ill. 96, 99, 100 (1900)), but, taken together with the other evidence, was sufficient to support a submission of the issue on that point to the jury. When defendant did reject, it was on the basis of his inability to get the consent of his partners. The words "no personal liability" stipulated in the Ticktin offer are not explained, but probably meant that if Ticktin had made the initial payment of $10,000, thereafter the resort of defendant for enforcement of the contract would be to the property. This could be done by the use of a nominee or "dummy." "The use of a nominee is uniformly recognized as an approved practice in limiting the liability of principals in real-estate transactions." *Barkhausen v. Continental Illinois National Bank,* 3 Ill.2d 254, 120 N.E.2d 649, 655 (1954), citing *Naas v. Peters,* 388 Ill. 505, 58 N.E.2d 530 (1944); *In re Childs Co.,* 2 Cir. 1947, 163 F.2d 379, 382. According to plaintiff's testimony, defendant did not make the restriction of personal liability a basis for refusing

to go through with the deal. The case was properly submitted to the jury.

*Judgment affirmed.*

ROBSON, J., concurs.

TUOHY, J., took no part.