Bernard Katz, Plaintiff-Appellee, v. Morris Brooks, Defendant-Appellant.

Gen. No. 50,414.

First District, Fourth Division.

December 3, 1965.

Harry B. Aron, of Chicago, for appellant.

Sheldon L. Glieberman, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals from a judgment awarding plaintiff a real estate brokerage commission in the amount of $5,000 after a finding that plaintiff had procured a purchaser who was ready, willing and able to buy defendant's property.

On July 10, 1962, defendant executed an exclusive sales listing agreement authorizing the plaintiff to procure a purchaser for defendant's property located at 2435 Peterson Avenue in Chicago, Illinois. The agreement by its terms expired without notice on September 15, 1962, and provided that plaintiff would be paid the rate of commission as recommended by the Chicago Real Estate Board if he found a buyer; that the sale price was $112,000; * that a deposit of 10% was required; and that defendant was to receive the balance entirely in cash. On September 13, 1962 (two days prior to the expiration of the agreement) plaintiff submitted to defendant a contract of purchase for the property at a price of $110,000 signed by a prospective purchaser who happened to be plaintiff's own attorney. Defendant refused to sign. The contract presented to the defendant stated:

This contract is specifically subject to and contingent upon the ability of Bernard Katz & Co. obtaining on behalf of Purchaser a first mortgage commitment on the subject property in the sum of $80,000.00, the said mortgage to be payable in equal amortized installments over a twenty (20) year period, including not more than six per cent (6%) interest, the costs for obtaining the same not to

* It is undisputed from plaintiff's evidence that defendant demanded a net price of $105,000 and that the $112,000 figure in the listing agreement represented that $105,000 plus the broker's commission.

157

exceed 1%. In the event said Bernard Katz & Co. shall fail to obtain such commitment (or in the event Purchaser is unable to obtain his own said commitment) on or before September 20, 1962, this contract shall become null and void and the Purchaser's deposit shall be forthwith returned.

The contract was further conditioned upon the purchaser's approval of various leases in effect for the subject premises. It provided that "in the event the Purchaser shall find that the same are not standard leases and/or contain unusual clauses or other provisions, he shall upon one day's notice be entitled to cancel this contract and obtain a return of the earnest money and all rights herein shall forthwith cease."

██ ██ A real estate broker, to be entitled to his commission, has the burden of proving that he procured a purchaser who was ready, willing and able to perform a contract to purchase the subject property and that the contract was in accordance with the authority given and terms specified by the seller. Oliver v. Sattler, 233 Ill 536, 84 NE 652. Defendant contends that plaintiff did not procure the requisite purchaser within the time limits of the listing agreement, asserting that due to the aforementioned contingencies in the purported contract of purchase tendered to him there was no binding contract at all but merely an option to purchase the subject property; that those contingencies were not authorized by him in the listing agreement; and that if he had signed the agreement to purchase he would have been bound to pay plaintiff a commission of $6,000 thus leaving defendant with a net of $104,000, which is less than he agreed to accept.

The purchaser was not legally bound to buy the property under the proposed contract since he had the discretionary right to cancel it if the leases contained "unusual clauses or other provisions" and since by its terms the contract became null and void if the mortgage

was not obtained. In Cooper v. Liberty Nat. Bank of Chicago, 332 Ill App 459, 75 NE2d 769, the court rejected a broker's claim for his commission where the contract of purchase contained a mortgage contingency clause substantially similar to that in the instant case. The court stated that the contract was conditional, not binding, and that the purported purchaser was not presently "able" to buy the subject property. Plaintiff in the instant case went to great lengths to prove that the proposed purchaser had the assets necessary to finance the deal. However, since the contract became null and void unless the $80,000 was obtained through a mortgage, the worth of the purchaser was of no significance whatsoever.

 Plaintiff maintains, however, that the aforementioned contingencies are customarily inserted in contracts for the sale of real estate and that the listing agreement did not specify what form the contract should take or the mechanics of the sale. From this plaintiff contends that he was impliedly authorized to insert the contingencies in the contract of sale and therefore he procured the requisite purchaser. It is a fundamental principle of law that a contract will be construed so as to give effect to the intention of the parties. Bonde v. Weber, 6 Ill2d 365, 128 NE2d 883. There is no evidence that defendant had actual knowledge of the alleged custom, if it is a custom, nor is there evidence that defendant had previously engaged in real estate transactions from which such knowledge can be imputed. Terms relating to the custom of a particular trade cannot be implied in a contract unless both parties had actual or implied knowledge of the custom. Hufford v. National Retailer-Owned Grocers, Inc., 16 Ill App2d 1, 147 NE2d 437. As stated in Swern v. Churchill, 155 Ill App 505, 507–08:

> True, a person who deals in a particular market must be regarded as dealing according to the general

159

> and uniform usage and custom of that market. . . . and as having knowledge thereof; but this rule does not apply to one having but a single transaction with a member of a profession, of which he is not himself a member, wherein exists a usage or custom by which it is sought to charge him on the ground it entered into his contract.

The cases cited by plaintiff relate to instances where such knowledge was imputed because the defendant previously had been involved in real estate transactions or where a third party has relied upon an agent's apparent authority, and are therefore distinguishable.

■ ■ Moreover, a trade custom or usage to be binding, must be so well known, uniform, long-established and generally acquiesced in as to induce the belief that the parties contracted with reference to it (nothing appearing in their contract to the contrary). Traff v. Fabro, 337 Ill App 83, 84 NE2d 874. The existence of the custom or usage must be proved as any other matter of fact (Gourley v. Chicago & E. I. Ry. Co., 295 Ill App 160, 14 NE2d 842) and the burden is on the party asserting it. Armour Grain Co. v. United States Grain Corp., 241 Ill App 332. Plaintiff introduced no evidence that there is a custom and usage permitting a purchaser to cancel his contract upon his determination that the leases are not standard "and/or contain unusual clauses or other provisions." Plaintiff alone testified only as to his practice in obtaining a mortgage commitment for a purchaser of a small home. Questions seeking to establish a custom and usage as respects the existence of the aforementioned mortgage contingency clause in contracts for the purchase of real estate were objected to. The objections were sustained and no other evidence was adduced. Plaintiff has not established the existence of the custom and usage upon which his argument is based.

■ ■ As for the price discrepancy, plaintiff admits that under the terms of the contract of purchase his

commission would be $6,000 thus netting defendant only $104,000 (which is $1,000 less than he agreed to accept) but contends that he offered to accept $5,000 as his commission so that defendant would net $105,000. The objection to plaintiff's testimony as to this waiver should have been sustained. Parol or extrinsic evidence is inadmissible to vary, alter or contradict a written agreement which is complete on its face unless it is evidence of a subsequent binding agreement between the parties. Mandell v. Miller, 14 Ill App2d 430, 144 NE2d 791. Plaintiff's alleged waiver of a portion of his commission was a unilateral act which did not constitute such an agreement. If defendant had signed the contract of purchase he would have been obligated to pay the full commission. Therefore, the proposed purchase price did not conform to the requirements of the sale price in the listing agreement.

Upon a consideration of the record we conclude that plaintiff is not entitled to a brokerage commission in that he did not procure, within the terms of the listing agreement, a purchaser ready, willing and able to buy defendant's property. Therefore the judgment of the trial court is reversed.

Reversed.

McCORMICK, P. J. and ENGLISH, J., concur.