**Nino Cabry, Plaintiff-Appellant, v. Harry E. Ionidas, Defendant-Appellee.**

**Gen. No. 69–107.**

Third District.

April 23, 1970.

Rehearing denied May 18, 1970.

STOUDER, J., dissenting.

Donald O'Shea, of East Moline, for appellant.

Ted Jackson, of East Moline, for appellee.

ALLOY, J.

Nino Cabry, a licensed real estate broker, filed an action against defendant, Harry E. Ionidas, to recover a commission alleged to have been earned through sale of defendant's house. The listing of the house which was located in East Moline specified that plaintiff was to act as broker in the sale of the house which was to be sold for $23,500, with $5,000 to be paid down and the balance to be paid in monthly installments at 6% interest. The broker was to be paid the 6% commission in the event of such sale.

On May 16, 1968, plaintiff arranged for the purchase by buyers, Mr. and Mrs. R. F. Brown, who signed a document which was called "Purchase Agreement and Receipt for Earnest Money." The form was prepared by the broker. As part of the purchase agreement, Browns gave the plaintiff-broker $100 "as earnest money deposit on the purchase of the following described property." The agreement further provided for sale of the property at $22,000 with $100 as earnest money and $3,900 additional to be paid at the time of closing. The $18,000 balance was to be carried on a contract for deed payable in installments of $192 per month with interest at 6% per annum payable monthly. Following the signature to such document by the Browns, plaintiff brought the document to defendant who also signed the agreement below words which had been prepared by plaintiff, "I hereby accept the terms and conditions above and agree to pay Nino Cabry Real Estate Agency . . . the regular rate of . . . commission."

Plaintiff acted as a broker in selling the home of the Browns prior to the time fixed for closing of the transac-

169

tion with defendant. The closing of defendant's transaction with the Browns, including the cash payment and the execution of the installment contract was to take place in the office of attorney Costigan. At such closing, the purchasers were not able to pay the balance of $3,900 as down payment and thus no papers were signed nor was there any sale made as between defendant and the Browns. The parties agree that the Browns were not able to purchase the premises through payment of the down payment.

Nevertheless plaintiff-broker filed action against defendant home owner for commission for sale of the house contending that defendant had accepted the Browns as buyers by signing the "Purchase Agreement and Receipt for Earnest Money." At the trial, plaintiff objected to any evidence showing that the Browns were not able to make the $3,900 down payment and that they did not, in fact, enter into an installment contract with defendant Ionidas and close the deal. The basis of the objection was that plaintiff in his complaint had stated that after the Browns had signed, the defendant "accepted" the buyers' and written contract, a copy of which was attached as "Exhibit B." A copy of such contract was attached to the complaint. In the answer of defendant, defendant admitted the execution of the agreement in the language hereinabove quoted. Defendant admitted that the copy attached was correct, but stated that the Browns could not procure the balance of the down payment at the time of the closing and moved from the State of Illinois. Defendant counterclaimed for the $100 which had been paid to plaintiff-broker as "earnest money." The trial judge found that no commission was owing to the plaintiff, and that defendant was entitled to the $100 being held by plaintiff.

■ ■ It is clear that in Illinois before a broker is entitled to his commission, he must show that he furnished a purchaser who is ready, willing, and able to buy

the property upon terms set forth or agreed to by the owner (Lang v. Hand, 57 Ill App 134; Tackett v. Powley, 130 Ill App 97). As stated in Greenwald v. Marcus, 3 Ill App2d 495, 123 NE2d 139, at 499:

> "It is true that an agent generally must prove that the prospective buyer was ready, willing, and able to buy at the price fixed."

Before a purchaser can be ready, willing and able to buy he must have sufficient funds on hand or be able to command the required funds needed to complete the purchase insofar as cash requirements are involved within the time agreed upon by the parties. In Adams v. Hall, 168 Ill App 569, where the purchaser was required to pay down $10,000 and had only $6,000 in cash and was attempting to negotiate a second mortgage on other property for $4,000, the court held that there was no showing that the second mortgage could be negotiated and it was, therefore, held that the broker had not furnished a purchaser who was able to buy.

In the case before us, the purchase agreement provided that the purchasers were to pay $3,900 at the closing with the balance of $18,000 to be set up on a 10-year installment contract. The purchasers were unable to make the $3,900 down payment, with the result that the transaction was not concluded as between the parties. It is clear from the record that the prospective purchasers who were obtained by the broker were not "able" to conclude the purchase, and, so far as that aspect of the case was concerned, the broker did not establish that he had provided a buyer or buyers who were ready, willing, and able to purchase the premises. Therefore, unless the broker was able to show that the defendant had waived this requirement and had agreed to accept the Browns as purchasers, regardless of their ability to make the payment or had waived such requirements in such a manner that would justify the conclusion that the sellers were

171

■■■■■■■■

taking a chance on the buyer being able to complete the purchase, the broker would not be entitled to recover the commission.

■■ The basic question before the court, therefore, is whether the defendant waived the right to question whether the purchaser furnished by the broker was ready, willing, and able to buy the property when the purchaser signed the acceptance notation at the bottom of the preliminary agreement. There was no other act which defendant had done which in any way showed any waiver other than the execution of the document which was tendered to defendant by the broker. The record indicates that defendant did not know the Browns and did not know of their financial inability to purchase until they appeared for the closing. The acceptance which was signed was simply one which stated that the seller accepted the "terms and conditions" specified in the agreement. One of the conditions was that there be the cash down payment at the closing. A contract of the type which was involved in this case must, if possible, be construed to give effect to the intention of the parties (Cedar Park Cemetery Ass'n v. Village of Calumet Park, 398 Ill 324, 75 NE2d 874; Katz v. Brooks, 65 Ill App2d 155, 212 NE2d 508). The instrument must also be construed most strongly as against the author, the broker (Cedar Park Cemetery Ass'n v. Village of Calumet Park, supra, at page 333). In applying such rules of construction to the agreement before us, it is clear that when the defendant signed the agreement, he was not accepting the Browns as purchasers irrespective of whether or not they could later make the cash down payment at the closing.

■■ Obviously, in signing the acceptance notation, defendant was merely accepting or assenting to the terms of a sale arrangement which he was to enter into with the Browns. From the time of the original listing with the broker which provided for a substantial down pay-

ment of $5,000, until the time of appearance for actual closing, seller had clearly indicated that the substantial down payment (reduced to $4,000) would be required to be made. The new terms of sale had been specified by the broker in the agreement which he prepared, and it was specified that the understanding as to sale was dependent upon payment of the down payment. Any ambiguities in the understanding, insofar as it relates to the broker and the claim of the broker as against the owner, should be resolved in favor of the owner since the broker prepared the agreement. It is apparent that the seller was relying on the fact that the purchaser furnished by the broker would be ready, willing, and able to make the down payment as outlined in the preliminary purchase document. The fact that the defendants signed an acceptance of "the terms and conditions above" did not mean that the defendant in any manner waived the basic requirement that the purchaser must be able to pay the down payment.

In the case before us there was no showing that defendant was given an opportunity to investigate the Browns to determine their ability to comply with the contract. It is apparent that there was no opportunity for an investigation nor was there any showing that the owner waived the need for an investigation. Since the broker asserted a waiver by defendant, the burden was on the broker to establish that there was, in fact, a waiver of the requirement that the purchasers be ready, willing, and able to fulfill the requirement by making payment of the down payment. On the basis of the record, it is clear that there was no unqualified acceptance of the Browns as the purchasers, irrespective of whether they were able to obtain the cash funds to complete the purchase arrangement.

In Burnett v. Potts, 236 Ill 499, 86 NE 258, the owner of 417 acres of land authorized a broker to sell his land for $35,000 net cash to the owner with the understanding

173

that the broker could keep all of the sale price over $35,000. A written contract of sale was entered into between the broker and a prospective purchaser for sale of the property. The broker received $1,000 when the contract was executed and the balance of $35,000 was to be paid to the owner by March 1 of the following year. Purchaser never paid anything else on the contract other than the $1,000 down payment. After the March 1 deadline the owner sued the broker for the $1,000 which he was holding and which the prospective purchaser had paid down and the court awarded the $1,000 to the owner. The court in such case stated (at page 501) :

> "Appellant was not entitled to any compensation for making this sale until appellees received the $35,000, unless their failure to so receive it was the result of their own fault. That it was not the fault of appellees is determined against appellant by the affirmance of this judgment by the Appellate Court."

The principle involved is relatively similar to the situation in the case before us and differs only in that the broker in the instant case was to receive a percentage of the sale price. The court in the Burnett case commented on this difference (at page 502) when it stated:

> "Such contracts differ from the usual agency contract where the compensation of the agent is a per cent of the price at which the sale is made, only in that the compensation is contingent upon the agent's obtaining more for the land than the owner has agreed to accept. If appellant had sold this land for $35,000 he would have been compelled to turn the entire proceeds over to his principals. We do not see upon what legal grounds he can be allowed to retain any part of the purchase money when only $1000 has been paid."

174

In Farber v. Fleck, 51 Ill App2d 145, 200 NE2d 903, the broker obtained a buyer for property and buyer made a $1,000 down payment. The agreement contemplated that the owner and buyer would enter into an installment contract for the balance of the purchase price with an additional $4,000 down payment. The articles of agreement for warranty deed were signed by both parties and buyer took possession and made payments for two years and then defaulted. The owner repossessed and retained all payments as liquidated damages and then sued to recover the commission he had paid the broker. The Appellate Court correctly held that the commission did not have to be returned as the broker had earned his commission when the installment contract was signed and the balance of the purchase price was paid. In the case before us, the cash payment was not made, and the installment contract described in the "purchase agreement" was never entered into by the parties. The sale arrangement which would entitle the broker to his commission was never consummated nor was there any waiver by the owner of the requirement that such down payment be, in fact, made or that the owner would take his chances or would conduct an independent investigation which would satisfy him.

■ On the other issue as to whether the defendant's answer admitted that defendant had accepted the Browns as purchasers, irrespective of their ability to conclude the purchase, it is clear that all defendant did, in effect, in his answer, was to admit that he signed the acceptance form at the bottom of the purchase agreement referred to which was attached to the complaint. It is clear that the acceptance of the owner was conditioned expressly upon making of the down payment and that there was no waiver of such requirement either by conduct or by express agreement. In Valois v. Pelletier, 84 RI 176, 122 A 148, the court emphasized that in that state, the

rule (which enunciated that a broker is entitled to a commission after he has produced a customer who is accepted by his principal), is modified by the consideration that a broker in producing a person as a purchaser, impliedly represents to the vendor (insofar as his right to commission is concerned) that such person is "able financially as well as ready and willing to purchase," provided the vendor relies solely upon the broker and does not, before entering into the contract, exercise his independent judgment of the customer's ability to purchase. This wholesome limitation prevents imposition of an unreasonable obligation upon the seller where the broker has obtained the signature of an irresponsible person to a purchase agreement, even though the broker is not guilty of any misrepresentation.

We are aware that there have been many general expressions to the effect that when the broker has obtained the signature of an owner to a purchase and sale agreement he has earned his commission. This is not, and cannot be the rule in all cases. We are cognizant of the method by which most sales of real estate are made in the State of Illinois. A proposal to purchase is obtained from a prospective purchaser and the broker then seeks to obtain the signature of the seller for the purpose of expediting the transaction. If an acceptance is made subject to certain terms and conditions specified in the agreement, and those terms and conditions require payment of a cash down payment, there is obviously a conditional acceptance. Unless there is a waiver on the part of the seller, there is no sale agreement completed, unconditionally, which would entitle the broker to his commission. If the seller in the instant case had stated that he would make an independent investigation of the prospective purchasers, or if he had stated that he knew the purchasers and still signed the agreement, this could conceivably have been construed as a waiver. Under the circumstances

176

present in the instant case, however, where the purchasers were presumably unknown to the seller and where the arrangements for sale were made as shown by the record, it is obvious that there was no waiver of the condition as to payment of the cash sum required to be paid. The trial court correctly concluded that the broker was not entitled to be paid a commission where the transaction did not in fact amount to a conclusive arrangement between the buyers and the seller, where the buyer was ready, willing, and able to make the down payment required.

On the basis of the record before us, we must, therefore, conclude that the judgment of the trial court was correct and should be affirmed.

Affirmed.

RYAN, P. J., concurs.

DISSENTING OPINION

STOUDER, J.

I disagree with the majority of the Court. Based on well-established principles, the plaintiff broker was entitled to his commission and the trial court erred in holding to the contrary.

To me, the reasoning employed and the result reached in the majority opinion are contrary to, or are unsupported by the Illinois authorities cited. Since the majority opinion ignores much of what is said in many of the opinions cited, it is difficult to ascertain whether the majority believes it is applying Illinois rules or whether it is adopting new rules contrary to those enunciated in prior Illinois authorities.

The first three cases cited in the majority opinion (Lang v. Hand, 57 Ill App 134, Tackett v. Powley, 130 Ill App 97 and Greenwald v. Marcus, 3 Ill App2d 495, 123 NE

177

2d 139) support the general proposition that a broker is entitled to his commission if he secures a purchaser ready, willing and able to buy the property on terms acceptable to the seller. Such cases go much farther than enunciating the general rule and indicate rules which are applicable in determining whether the broker has fulfilled the conditions.

In Lang v. Hand, supra, the Court affirmed a judgment in favor of the broker for his commission. The facts are not extensively set forth, but it does appear that the defendant seller had entered into a contract with a buyer which contract for some reason was not performed. The court stated, "Whether the contract was ever carried out for reasons existing between the parties to it, and for which the broker was not responsible, cuts no figure so far as either the merits or the law of this case is concerned."

The defendant seller had entered into a contract with a buyer in Tackett v. Powley, supra, and the court held the broker entitled to his commission where title problems had developed and the contract was rescinded by the mutual agreement of seller and buyer. The court approved the following quotation from Wilson v. Mason, 158 Ill 304, 42 NE 134, "When the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into, which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase." It also approved the following quotation from Jenkins v. Hollingsworth, 83 Ill App 139, "If vendor accepts the purchaser and enters into a valid contract with him the broker's commission is earned even though the purchaser declines to complete the sale."

Greenwald v. Marcus, supra, holds that a real estate broker was entitled to his commission where a written

offer in accord with the seller's terms was submitted but did not ripen into a contract and was not performed because the seller (previously representing himself as the sole owner) was unable to purchase the interest of his partners. The court observed that, the purchaser's proposal being satisfactory to the seller, the broker had complied with his duty and was not required to prove the financial ability of the purchaser.

In Katz v. Brooks, 65 Ill App2d 155, 212 NE2d 508, the court held the broker not entitled to his commission, but it does so on account of facts so diametrically opposed to those in the instant case that it supports a result opposite to that reached by the majority. In Brooks, a written offer was submitted by a purchaser which offer was specifically declined by the seller because it was not in accord with the terms upon which the broker was authorized to sell the property. Specifically, the offer included two contingency clauses, one relating to financing and the other to leases which could have rendered the entire contract void. In addition, the price described in the offer was less than that specified by the seller. If a seller specifically rejects a purchaser's offer, it can hardly be said that the same reasoning and consequences ought to be applicable to the case where the purchaser's offer is approved by and acceptable to the seller.

The broker was denied his commission in Adams v. Hall, 168 Ill App 569. This is the only case cited in the majority opinion where any broker was held not entitled to a commission because of the financial inability of his proposed purchaser. The facts in the Adams case are so sketchy and incomplete that any comparison or argument by analogy is impossible. It does appear that no contract was entered into between seller and buyer and the buyer's offer was never accepted or approved. The case although decided in 1912, does not appear to

179

be of sufficient significance to have been cited or followed in any subsequent case involving real estate broker's commissions. In Spitzer v. Bradshaw-Praeger & Co., 10 Ill App2d 445, 135 NE2d 114, the court in commenting on the Adams case stated, "It is true that Adams v. Hall, 168 Ill App 569, cited by defendant in support of its position, does glance in the other direction. However that myopia was definitely corrected by the subsequent decisions we have before cited." The most that can be said about this case is that it is irrelevant to any of the issues to the case at bar.

Farber v. Fleck, 51 Ill App2d 145, 200 NE2d 903, also cited by the majority, decided that the broker had earned his commission even though a purchaser under an installment contract had defaulted thereon. The court concluded that the listing contract between broker and owner had been performed by the broker even though the terms of sale were more restrictive than usual and customary. The court concluded that the execution of the installment contract was in accord with the terms of the listing contract and consequently the nonperformance of the installment contract by the purchaser could not prevent the broker from earning his commission. To the extent there is any analogy between this case and the case at bar, it would indicate a result contrary to that reached by the majority.

Burnett v. Potts, 236 Ill 499, 86 NE 258, the only other Illinois authority cited in the majority opinion, holds that under the circumstances therein involved, the broker was not entitled to a commission. The Burnett case is inapplicable by its own terms to the case at bar. The broker was denied his commission because of the "net cash" provision of the listing contract, the court construing such provision to require that the seller receive the specified price in cash before the broker could earn his commission. The court neither discusses, applies nor mentions the general rule that a broker is en-

titled to his commission when he procures a buyer ready, willing and able to purchase the property on terms acceptable to seller. If the general rule is not applied neither the result nor what was said by the court can be of any assistance in the case at bar.

Fox v. Ryan, 240 Ill 391, 88 NE 974 (not cited in majority opinion) holds that a broker is entitled to his commission even though the contract between seller and buyer is abandoned or rescinded. The court declares, "But, where the seller accepts the purchaser and enters into a valid contract of sale with him, the broker's commission is earned whether the purchaser subsequently fails to perform his contract and make the payments agreed upon or not." The court further states, "The vendor of property is not required to accept a purchaser without opportunity for investigation as to his ability to comply with the terms of the contract, but where he does accept such purchaser, uninfluenced by fraud or misrepresentation, it is a determination by him of the purchaser's ability to perform his contract, and, if the purchaser afterwards fails to perform it, the seller cannot defeat· the broker's commission on the ground that the purchaser was not able to buy the property."

In Rushkiewicz v. St. George, 226 Ill App 310 (not cited by majority) the significant facts cannot be distinguished in my view from those in the instant case. The court concluded the broker was entitled to his commission even though the sales contract might have been unenforceable because of want of mutuality. The court emphasizes that the broker is entitled to his commission when he has performed his agency contract to the satisfaction of the seller. In Rushkiewicz the court concluded that the acceptance of the purchaser's offer, even though no enforceable contract resulted, established the broker's performance to be satisfactory and acceptable. Furthermore, since the broker's right to his commission did not depend on the purchaser's performance of the

181

sales contract, neither the failure of the purchaser to perform the contract nor his financial ability were relevant considerations.

In summary, I believe all of the foregoing authorities are in accord with the general view that in the absence of fraud or misrepresentation, the execution of a sales contract by the seller establishes the broker's performance of his obligation, thereby entitling him to his commission. No fraud or misrepresentation was charged or proved. In the absence of fraud or misrepresentation, the seller having approved the purchaser, the latter's financial ability was not an issue in the case. The most the record discloses is that the purchaser declined to perform the contract, and the seller declined to enforce the contract. The trial court apparently concluded, and in my view erroneously, that it was the duty of the broker to prove the financial ability of the proposed purchaser notwithstanding the seller's approval of the purchaser.

The majority opinion suggests that the seller ought to be excused from liability because he was deprived of an opportunity to investigate the purchaser's financial ability, but such views are without support either in the record or in the cases cited. All the record shows is that the seller voluntarily entered into the sales agreement. Again, in the absence of misrepresentation or fraud, the execution of the agreement itself negates any such assertion. Also, the record is barren of either any assertion or evidence that the defendant seller's execution of the sales contract was conditional or that the terms of the purchase agreement were in any way unsatisfactory to him.

Lastly, in view of the Illinois authorities, I see no reason for applying Rhode Island law as represented by Valois v. Pelletier, 84 RI 176, 122 A 148, cited in the majority opinion. Indeed Valois v. Pelletier, supra, concedes that the rule in Rhode Island is contrary to

the weight of authority. Furthermore, the issues in the trial court were not based on the violation of any implied warranty and the interjection of such an issue at this stage in the proceedings is unwarranted.

In conclusion, I believe that all of the Illinois authorities are consistent with the view that the trial court erred in denying the plaintiff his commission. If the Illinois rule ought to be changed, it should be done so forthrightly but only in the case where the issue is presented to, and decided by the trial court.