[Civ. No. 31076.   Second Dist., Div. Five.   Apr. 15, 1968.]

JMR, INCORPORATED, Plaintiff and Appellant, v. R. E. HEDDERLY et al., Defendants and Respondents.

Robert M. Miller for Plaintiff and Appellant.

Elwood Bowles and Ralph J. McGookin for Defendants and Respondents.

STEPHENS, J.—On July 10, 1965 John M. Roach signed a document prepared by a business broker entitled: "Offer and Deposit on Sale of Business." The document constituted a purported offer on the part of Mr. Roach "or Corporate Nominee" to purchase from defendants (owners of a master lease) a restaurant and cocktail bar business, and to give a 12-year sublease of the premises on South Western Avenue in the City of Los Angeles. The purchase contract provides, among other things: (1) that the purchase is "Subject to buyers receiving a sub-lease of the premise at the terms of $450 per month for 5 years; $475 per month for 4 years; $500 per month for 3 years; subject to buyers approval"; (2) that the unpaid balance of the purchase price is to be secured by a "pledge of the corporate stock"; (3) that the purchaser is John M. Roach or corporate nominee. The offer was accepted by defendants. On July 22, 1965 and subsequent to the date of

defendants' acceptance, Roach sent a letter to the defendants. By this letter, Roach sought to exercise his right of nomination, and named the plaintiff as nominee purchaser of the business. Escrow was opened by plaintiff, and the defendants refused to go through with the escrow. Plaintiff filed its action seeking specific performance and damages. Defendants demurred, and the demurrer was sustained with leave to amend. Plaintiff amended, dropping the prayer for specific performance. Defendants answered the amended complaint, and at the time of trial moved to dismiss on the ground that the complaint failed to state a cause of action.[1] The motion was granted. This appeal is from the order of dismissal.

The sole question on this appeal is whether the terms of the agreement discussed above were sufficiently definite to constitute a contract. The defendants contend that indefiniteness on three separate grounds prevents the agreement from constituting a binding contract. They contend: (1) the parties left to future negotiations the terms of a sublease for the premises on which the business stood, and that in the absence of finalization of the terms of the sublease, no contract resulted; (2) the terms of the security pledge of the corporate stock to secure the balance of the purchase price were too indefinite to constitute a final agreement; (3) a contract allowing Mr. Roach to choose a corporate nominee to be the purchaser is "indefinite, uncertain, unilateral and a nullity." We do not agree with defendants; the contract cannot be said to be too indefinite as a matter of law.

### The Sublease

The relevant terms of the agreement pertaining to the sublease are as follows: "4. Subject to buyers receiving a sublease of the premise at the terms of $450 per month for 5 yrs; $475 per month for 4 yrs; $500 per month for 3 yrs; subject to buyers approval." "11. Terms of master lease subject to approval of buyers—sublease to provide that sublessee may keep master lease free from default and charge to seller." Defendants correctly cite the line of cases holding that where significant aspects of an agreement are left to the future agreement of the parties, there is no contract until such agreement is reached. They contend that the uncertainty of the terms of the sublease brings this case within that line. (See *Kessler* v. *Sapp*, 169 Cal.App.2d 818 [338 P.2d 34]; *Salomon* v. *Cooper*, 98 Cal.App.2d 521 [220 P.2d 774].) On the other hand, the plaintiff correctly cites the line of cases

---

[1] No pretrial was had in this case.

holding that because a certain condition precedent to an agreement is that one of the parties approve of certain items that are not within the area of future negotiation of the contracting parties, the contract is not illusory. The promise is argued as binding because any disapproval must be in good faith. (*Mattei* v. *Hopper*, 51 Cal.2d 119 [330 P.2d 625]; *Pease* v. *Brown*, 186 Cal.App.2d 425 [8 Cal.Rptr. 917] and cases cited therein.) The problem is within which line of cases the instant case falls.

If the terms of the sublease are left to be determined between the parties, then we have a mere agreement to seek an agreement in the future; if there is nothing left to negotiate between the parties and the plaintiff can merely take or leave a sublease along the terms of the already existing master lease, then we have a binding contract within the terms of the *Mattei* decision. We conclude that the quoted provisions of the purported offer are capable of either interpretation. In such a case, evidence should be taken by the trial court on the facts, circumstances and conditions surrounding the formation of this agreement to indicate which alternative meaning, if any, the parties intended. It was not proper to dismiss this action without a hearing and production of evidence. (*Caffroy* v. *Fremlin*, 198 Cal.App.2d 176, 182-183 [17 Cal.Rptr. 668].)

### The Stock Pledge

Item 3 of the purported offer reads as follows: "Balance of $13,750 to be payable at $250 per month or more including 7% interest and will be secured by a re-assignment of the lease to the seller, security agreement on fixtures and equipment and pledge of *the* corporate stock, all to be returned when note is paid." (Italics added.) Defendants contend that the stock pledge provision is too uncertain to be enforceable since it leaves unsettled such items as the identity of the corporation whose stock is to be pledged and the number of shares to be included in the pledge. Again we cannot agree that this is so as a matter of law. The appellant contends that the parties knew it was *all* of the stock of the corporate nominee that was to be the subject of the pledge, and that a corporation would be organized for the sole purpose of purchasing the restaurant and bar. Use of the word "the" as underlined above does indicate that the parties did have a specific corporation in mind. Evidence should be taken to determine if the parties had a specific corporation to be formed in mind and understood the pledge was to be of all of

its stock. If they did, the agreement is not so uncertain as not to be enforceable as a contract.

### The Corporate Nominee Provision

The defendants cite the case of *Rivadell, Inc.* v. *Razo,* 215 Cal.App.2d 614, 625 [30 Cal.Rptr. 622] for the proposition that the ability of Roach to get out of personal liability on the contract merely by designating a corporation as the purchaser made the promise to purchase illusory and the contract a nullity. It is true that the court in that opinion did say that an offer to purchase in that form was not a binding offer on the part of the named offeror. But in that case the action was for a broker's commission for producing a buyer "able, willing and ready" to purchase. That case correctly held that there was no indication that an unnamed nominee met those qualifications and, as such, the commission was not earned. This is not to say that there is not a binding offer from the named offeror or the unnamed nominee together. We think there is nothing illusory about the promise. Either Roach had to buy the business, or he had to find a corporation that would; he simply couldn't refuse to buy and then walk away. The corporation nominee might be of an undesirable type and one to whom the seller would not wish to sell, but that question extends to the wisdom of the contract, not its enforceability.

Courts will not weigh the sufficiency of consideration so long as there is, in fact, consideration. (12 Cal.Jur.2d, Contracts, § 30.)

Further, we conclude that cases such as *Cisco* v. *Van Lew,* 60 Cal.App.2d 575 [141 P.2d 433] and *Ott* v. *Home Sav. & Loan Assn.* (9th Cir. 1958) 265 F.2d 643 do not foreclose the plaintiff in the instant action from bringing this action merely because it is a nominee. We conclude that it should have the opportunity to present evidence to show that the contract was made in the contemplation of the formation of the plaintiff corporation, and for its benefit, and that it adopted and ratified the contract after its formation. Under such facts the plaintiff corporation may enforce the contract. (*El Rio Oils* v. *Pacific Coast Asphalt Co.,* 95 Cal.App.2d 186, 192-193 [213 P.2d 1].)

The judgment (order dismissing the complaint) is reversed, and the cause remanded for further proceedings in conformity herewith.

Kaus, P. J., and Aiso, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.