John W. MacCarthy, Plaintiff-Appellant, v. Marshall L. Skelcher and Martha E. Skelcher, Defendants-Appellees.

Gen. No. 69–11.

Fifth District.

July 23, 1970.

Rehearing denied, August 25, 1970.

EBERSPACHER, J., dissenting.

Kenneth Powless, of Marion, for appellant.

Harris, Holbrook, & Lambert, of Marion, for appellees.

GOLDENHERSH, J.

Plaintiff appeals from the judgment of the Circuit Court of Williamson County entered in favor of defendants following a trial before the court and without a jury.

Plaintiff's complaint alleges he is a licensed real estate broker, that he and defendants entered into a written agreement under the terms of which defendants agreed to pay him the sum of $15,000 as compensation "for his services and procuring a purchaser" for certain property owned by defendants, he procured a purchaser for the property "in accordance with the said contract," and the same was consummated by defendants.

Defendants answered alleging no sale was consummated, plaintiff did not procure a purchaser ready, willing and able to buy, the alleged purchasers were defendants' customers not procured by plaintiff, and alleging four special defenses which will be discussed only to the extent necessary to this opinion.

The agreement attached to plaintiff's complaint provides that defendants agree to pay plaintiff $15,000 for selling the Lake View Hunt Club for $165,000 to one

of his clients, and if defendants sell the club themselves to someone who is not plaintiff's client, no commission will be owed. The agreement was to be in force for a period of 45 days commencing on October 16, 1967.

Although the testimony is conflicting as to the details, the evidence shows that defendant, Marshall Skelcher, put plaintiff in touch with individuals with whom Skelcher had been dealing. On November 3, 1967, a document headed "OFFER TO PURCHASE AND DEPOSIT RECEIPT" was executed by plaintiff as "broker" acknowledging receipt from "Devil's Kitchen Hunt Club, Inc., a proposed corporation," of a note in the amount of $90,000 to be secured by a first mortgage on the premises, and indicating that $75,000 in cash was to be paid in 120 days. The instrument is executed on behalf of the "proposed corporation" by its secretary (presumably also proposed) and the offer is accepted by defendants.

On November 8, 1967, defendants as sellers, and Jack P. Gibbs, Robert T. Turnage and William L. Grindle as buyers, executed a document headed "Contract for Purchase Agreement" in which defendants agree to convey to "Devil's Kitchen Hunt Club Incorporated, party of the second part" real estate described,

> "Provided and on condition that the party of the second part shall pay or cause to be paid to the party of the first part, as purchase money for said Real Estate, the sum of One Hundred Sixty-five Thousand ($165,000) dollars payable as follows: $90,000.00 first mortgage and notes with the Bank of Illinois, Mount Vernon, Illinois at 7% interest and 3 points for 120 days; and a $75,000.00 second mortgage at 7% interest and no points for (one year, MLS RRT) . . . payable to Marshall L. Skelcher and Martha E. Skelcher, Route 1, Makanda, Illinois. The first mortgage of $90,000 and the second mortgage of $75,000 will be signed for the

411

Devil's Kitchen Hunt Club Incorporated. Taxes for 1967 payable in 1968 will be prorated.

"Marshall L. Skelcher and Martha E. Skelcher will place a warranty deed in escrow with the Bank of Illinois to be surrendered when final payment is made. In case said purchasers, party of the second part, refuse or neglect to enter into this contract within five days from date, this contract will be null and void."

The agreement also contained a provision that Gibbs, Turnage and Grindle would sign as "accommodation makers with respect to $15,000.00 of the $90,000.00 first mortgage indebtedness."

Thereafter on November 15, 1967, defendants executed and deposited with the Bank of Illinois at Mt. Vernon, a warranty deed conveying the land to Devil's Kitchen Hunt Club, Inc. A mortgage purporting to secure a note in the amount of $92,700, due on March 15, 1968, naming Bank of Illinois as mortgagee, was executed by Devil's Kitchen Hunt Club, by its president and secretary. A second mortgage executed by Devil's Kitchen Hunt Club, Inc. to the same mortgagee, purportedly secures a note in the amount of $75,000, due November 15, 1968. Neither mortgage bears the imprint of a corporate seal and it cannot be determined from the record whether, in fact, such a corporation came into existence and if so, the State of incorporation. Gibbs, Turnage and Grindle executed a guaranty to the extent of $15,000.

An escrow agreement between Devil's Kitchen Hunt Club, Inc. and Bank of Illinois was executed on November 15, 1967, which provides for the escrow of funds to be received from subscribers to the stock of an Illinois corporation to be known as Devil's Kitchen Hunt Club, Inc.

It appears from the testimony that the deed and mortgages were placed of record. It does not appear that

any stock was sold, and no funds were deposited with the Bank of Illinois under the escrow agreement.

Plaintiff testified that defendant, Marshall Skelcher, told him of the prospective purchasers and he proceeded to negotiate the transaction which resulted in the execution of the documents.

Defendant Marshall Skelcher testified plaintiff had stated he knew prospective investors for the deal. He stated that in his conversation with plaintiff it was agreed that if plaintiff "found investors who contributed toward the $165,000.00 or paid it he was to receive a commission of $15,000.00," otherwise he was not to receive a commission.

Plaintiff testified he knew the purchasers did not have the money to complete the transaction, but in view of the agreement for the execution of the two mortgages, no money was necessary.

The trial court found:

"(1) That the purchasers were the clients of Skelcher;

"(2) That the services of MacCarthy were accepted by Skelcher after the clients were known, by MacCarthy, to be Skelchers;

"(3) That MacCarthy knew or should have known of the promotion plan and organization involved in this transaction and that he accepted the risk of his fee with this promotional arrangement;

"(4) That MacCarthy thus became a participant in this promotion and his fee became contingent upon its success;

"(5) That the promotion plan failed. MacCarthy's prayer for a fee must be denied; and, therefore, enters judgment in favor of the defendants and against the plaintiff."

and entered judgment for the defendants.

Plaintiff contends that the court erred in admitting, over his objection, testimony of the alleged agreement

413

with respect to the promotion of investment funds. He argues that the admissible evidence shows the only modification of the listing agreement to be defendants' waiver of the provision that no commission was due if the buyers were their prospects or customers.

He contends that by accepting the purchasers, and entering into a valid and enforceable contract, defendants made a determination of the purchasers' ability to perform, plaintiff's commission became due and payable, and failure of either party to carry out the contract does not affect his right to the commission. He argues that he produced purchasers with whom defendants were satisfied, and their ability to perform is therefore not material.

■ Plaintiff's evidence shows an oral waiver of the specific provision of the agreement between the parties, and defendants' evidence of the terms upon which the provision was waived was properly before the court.

■ ■ In order to recover, plaintiff was required to prove that he produced a purchaser ready, willing and able to consummate the purchase upon the terms and conditions which, under plaintiff's agreement with the defendants, entitled him to a commission, Oliver v. Sattler, 233 Ill 536, 84 NE 652. There is an evidentiary basis for the trial court's finding that the transaction, and plaintiff's right to a commission, were contingent upon success of the promotional scheme, and we cannot say it is so manifestly erroneous as to require reversal. The judgment of the Circuit Court of Williamson County is therefore affirmed.

Judgment affirmed.

MORAN, J., concurs.

EBERSPACHER, J., dissenting.

Both the trial court and this Court agree that plaintiff presented sufficient evidence of waiver of the ex-

414

clusionary provision of the written brokers agreement entered into by plaintiffs and defendants on October 16, 1967, which provided in pertinent part as follows:

> "Marshall L. Skelcher and Martha E. Skelcher agree to pay John MacCarthy $15,000.00 commission for selling the Lake View Hunt Club for $165,000.00 to one of his clients. However, in the event that Skelcher sells the club himself to somebody that is not one of MacCarthy's clients; Marshall L. Skelcher and Martha E. Skelcher will not owe any commission to John MacCarthy. This agreement shall expire 45 days from date."

No one contends that it is ambiguous.

In view of defendants' contention, by way of special defenses, that plaintiff in order to earn his fee must have promoted some investment funds so that the purchaser or purchasers could perform financially, evidence that plaintiff's right to the commission was contingent upon success of the promotional scheme was admissible. But the burden of proof on special defenses was on defendants.

None of plaintiff's evidence, either by direct or by cross-examination, supports the special defenses. On behalf of defendants, Mr. Skelcher testified principally to the effect that the purchasers were not MacCarthy's clients, and that he had not waived the exclusionary clause, a position which both the trial court and this Court agree was not supported by the evidence. Skelcher's testimony that MacCarthy's fee was contingent on success of the promotional scheme was certainly not clear nor preponderant. It does not suggest that such was the condition imposed at the time of signing the agreement on October 16, 1967, but suggests that when Skelcher subsequently advised plaintiff of the prospective purchasers and suggested MacCarthy get in touch with them and attempt to close the sale with them,

there came into being an understanding that MacCarthy's commission was contingent on MacCarthy's promotion of a part of the funds to effect a purchase. Obviously, at that time Skelcher had not accepted either the purchasers or the terms of the contract calling for no cash. That evidence cannot be said to be sufficient to prove that MacCarthy waived the unambiguous provisions of the brokerage agreement, or that MacCarthy agreed to alter its terms.

The other witness, Grindle, whom plaintiff called to support the contingent fee theory positively stated that he never discussed the matter of the brokerage fee with MacCarthy from the time MacCarthy was put in touch with him by Skelcher, in the last part of October or early November, until after the matter was closed at the bank on November 15. He did not testify to any admission of MacCarthy or any conversation between Skelcher and MacCarthy to the effect that MacCarthy's fee was contingent. He testified that he and Mac-Carthy discussed the promotional idea, the purchase without cash and the possibility of MacCarthy promoting some investors both before the final papers were signed and after, but he concluded "MacCarthy's conversation with regard to stock and membership was friendly, helpful talk rather than a direct commitment."

The evidence of MacCarthy's conduct during all the time in question was consistent with that of a broker obtaining a purchaser for his client. The evidence is not consistent with the theory that MacCarthy was employed as agent of the proposed incorporators or of Skelcher to seek investment funds. Everyone knew that MacCarthy was not licensed to sell investments or shares of stock. I find no evidence from which it can reasonably be inferred that MacCarthy waived the plain and unambiguous terms of the brokerage contract executed on October 16.

Defendants do not contend that the contract for purchase agreement, which was signed by Skelchers on September 8th and which contained the terms of the sale was void because the party of the second part did not enter into it within 5 days. When the parties met at the bank on November 15, Skelcher accepted the execution of the mortgages and all the instruments delivered to the bank including a title policy and his deed, knowing that no cash was available, but hoping someone would raise some; there is no testimony that he objected to either the terms or the purchasers, nor is there any testimony that he advised MacCarthy at that time that his commission would be contingent on some money being paid to the bank. Skelcher accepted the deal as there executed that day. There can be no question that the "Offer to purchase and deposit receipt" executed by plaintiff as broker on November 3, was superseded by the "Contract for Purchase Agreement" dated November 8 and the subsequent closing. As a result Cabry v. Ionidas, 122 Ill App2d 167, 258 NE2d 45, is not applicable here.

The case of Fox v. Ryan, 240 Ill 391, 88 NE 974 (1909), was an action in assumption to recover a $4,000 commission claimed by plaintiff-broker to be due him for services rendered in effecting a sale of defendant's mining stock. The seller knew of the potential purchaser some years before engaging the broker. He requested the broker to direct his efforts toward effecting a sale to this particular purchaser. The broker was successful in that a contract of sale was entered into by mutual agreement of seller and purchaser; subsequently the purchaser forfeited. The court stated the law as follows:

> "Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority, who is ready, willing

and able to purchase upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness, and ability of the purchaser to take the property on the terms proposed. But where the seller accepts the purchaser and enters into a valid contract of sale with him, the broker's commission is earned whether the purchaser subsequently fails to perform his contract and make the payments agreed upon or not. 240 Ill 396."

And at page 397:

"The vendor of property is not required to accept a purchaser without opportunity or investigation as to his ability to comply with the terms of the contract, but where he does accept such purchaser, uninfluenced by fraud or misrepresentation, it is a determination by him of the purchaser's ability to perform his contract, and if the purchaser afterwards fails to perform it, the seller cannot defeat the broker's commissions on the ground that the purchaser was not able to buy the property."

Here the ultimate contract was signed and performed to the satisfaction of defendants who delivered their deed and title policy with knowledge that the purchasers had no funds at that time with which to satisfy any of the obligations they had made to eventually compensate the sellers for the purchase price. Neither the brokerage agreement nor any of the instruments delivered to the bank provided plaintiff's commission was to be paid from the proceeds of the sale. The broker performed to the satisfaction of the sellers in consummating a deal which they knowingly accepted;

no terms of sale nor reference to any contract of sale were made in brokerage agreement. Under such circumstances plaintiff's fee should not be withheld because the purchasers did not perform. See Farber v. Fleck, 51 Ill App2d 145, 200 NE2d 903.

I would therefore reverse the judgment and enter judgment for plaintiff.