JEROME S. FEDER, d/b/a Creative Real Estate, Plaintiff-Appellee, *v.* RIVER'S EDGE RESTAURANT, INC., Defendant-Appellant.—(FLOYD LOFCHIE *et al.*, Defendants.)

First District (4th Division) No. 77-1254

Opinion filed April 27, 1978.

Donald S. Shifris and Kevin G. Barry, both of Law Firm of Donald S. Shifris, of Chicago, for appellant.

Michael D. Weis, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The issue in this case is whether the mere fact that a property was sold entitles a broker, who once had an exclusive right to sell the property, to a commission, as a matter of law, where the owner contends that the right to sell was validly revoked two weeks before the sale; and where the owner also contends that the purchaser was obtained by a former broker who has been paid the commission, and that the parties had understood that the second broker would not be entitled to a commission if the property was sold to a purchaser procured by the first broker, although the listing agreement contained no express provision to that effect. As to sales after the plaintiff's right to sell was revoked, the listing agreement provided that the plaintiff broker was entitled to a commission if the property was sold to a purchaser "to whom the property was offered during the period hereof." The trial court held that there was no issue of fact and granted the plaintiff's motion for summary judgment. We

disagree, finding the above-quoted provision ambiguous and reverse for trial.

It appears from the allegations and exhibits introduced by the parties that one of the defendants, River's Edge Restaurant, Inc., through its officer Floyd Lofchie, another defendant, executed a 30-day exclusive sales listing with Crowley & Associates, real estate brokers, on September 10, 1975, for the sale of the restaurant. That agreement expired according to its terms after 30 days. However, the agreement entitled Crowley to a commission if the property was sold "at any time subsequent to the expiration date hereof to any prospect submitted by you during the term of this exclusive sales listing." On October 1, 1975, Crowley sent a list of the names of these prospects to Lofchie. The name of Mr. Phillips, who was an agent for Helen Phillips, who later purchased the resturant, was on the list. On November 10, 1975, the plaintiff Feder, doing business as Creative Real Estate, and River's Edge, through Lofchie, signed an exclusive sales agreement apparently drawn up by the plaintiff since it is on the plaintiff's stationery. The agreement provided that the owner employed the plaintiff as the sole and exclusive agent to sell River's Edge for $165,000 or any lesser amount the undersigned might agree to accept. The owner agreed to cooperate fully with the agent and to refer all inquiries to him; to conduct all negotiations through him and to pay him a brokerage commission of ten per cent of the full purchase price if [Clause I] the agent produced a purchaser ready, willing and able to buy the premises, or [Clause II] if a contract to sell was executed through or as a result of the services and efforts of the agent or owner or any other person during the period of the listing agreement, or [Clause III] if a contract to sell was executed after the termination of the listing agreement "with a purchaser to whom the property was offered during the period hereof." The agreement also provided that it should remain in effect for 90 days and thereafter until terminated by one of the parties by giving the other party 30 days' written notice or until one year had elapsed. Lofchie, in his affidavit in response to the motion for summary judgment, stated that before the listing agreement was drawn up, he showed Crowley's list of prospects to the plaintiff and told him that Crowley was entitled to a commission if the property were sold to any of these prospects.

On May 3, 1976, Lofchie sent the plaintiff a letter cancelling the exclusive contract as of June 3, 1976, since none of the plaintiff's potential buyers had committed themselves and they had one potential buyer, Mr. John Phillips, a client of Crowley Associates. As all the parties agree, a contract to sell River's Edge to Helen Phillips was entered into on June 16, 1976, for $150,000. A commission of $15,000 was paid to Crowley Associates.

The plaintiff has now sued to recover a commission of $15,000 alleging that he produced a purchaser, namely Helen Phillips, ready, willing and able to buy the restaurant, or that the agreement to buy the property was executed during the period the listing agreement was in force as a result of the restaurant's efforts or those of some other person, or that the agreement to buy the property was executed after the listing agreement had been cancelled to a person to whom the property was offered during the period the listing agreement was in force. The defendants admitted that a contract of sale was entered into with Helen Phillips on June 16, 1976, but denied the other allegations. The plaintiff in his reply to the defendants' answer to the motion for summary judgment contended that even if there had been a prior exclusive sales agreement with Crowley, and even if the plaintiff knew Lofchie would be bound to pay a commission to Crowley if the property were sold to any of Crowley's prospects, and even if the agency between the plaintiff and River's Edge was cancelled by the May 3 letter, the plaintiff would still be entitled to a commission since Helen Phillips had been offered the property during the time the exclusive sales agreement between the plaintiff and River's Edge was in effect. We are unable to agree with this contention for the simple reason that the plaintiff failed to prove that Helen Phillips was offered the property during the lifetime of the sales listing. To the contrary, it appears uncontradicted that she was offered the property before the listing went into effect and it is not clear whether the third clause, which appears to be the only one applying after the listing was cancelled, is meant to apply to persons offered the property before the listing went into effect, such offer remaining open during the lifetime of the listing agreement.

## I.

 In the trial court, and basically on appeal, River's Edge has argued that there was an oral condition precedent that the contract only attached to purchasers not obtained by Crowley. In other words, that before any duty to pay arose, the property had to be sold to someone not on Crowley's list. It is true that a condition precedent does not need to go to the very creation of the contract itself and may go the party's duty to perform. (*Farnsworth v. Lamb* (1972), 6 Ill. App. 3d 785, 286 N.E.2d 74.) Thus parol evidence has been held admissible to show that the duty to pay a commission if the broker obtained a purchaser was conditioned on some other requirement not mentioned in the listing agreement. (*Jess Fisher & Co. v. Darby* (D.C. Mun. App. 1953), 96 A.2d 270 (that other apartment house be obtained), but compare *Mooney v. Boyd* (1952), 86 Ga. App. 369, 71 S.E.2d 685 (evidence of condition that purchaser not liable if her house not sold not admissible).) Nevertheless, it is well settled that evidence of an oral condition precedent is inadmissible if that

condition would contradict the terms of the written contract. (*Jess Fisher & Co. v. Darby* (D.C. Mun. App. 1953), 96 A.2d 270; *National Bank & Trust Co. v. Becker* (1962), 38 Ill. App. 2d 307, 187 N.E.2d 355, *appeal denied* (1963), 26 Ill. 2d 627.) Here the alleged condition precedent contracted Clause II which provided that the agent was entitled to a commission if a contract to purchase was entered into during the lifetime of the listing agreement whether the agent, the owner or any other person was responsible for obtaining the purchaser. So it seems clear that if the contract on June 16 was entered into during the lifetime of the listing agreement the plaintiff is entitled to recover his commission regardless of any prior oral agreement or understanding between the parties which, in the absence of any fraud or mistake, cannot be allowed to contradict the express terms of the written agreement.

## II.

■■■ Nevertheless we cannot agree that the plaintiff was entitled to a summary judgment. It is not established that the June 16 contract was entered into during the lifetime of the listing agreement. Lofchie, acting for River's Edge, sent a letter cancelling the plaintiff's right to sell as of June 3, 1976. This letter appears to be in conformity with the requirements of the listing agreement as to cancellation, and appears to have effectively revoked the plaintiff's authority. The plaintiff to this point has raised no contention that the letter was not effective. Assuming that no contract of sale was entered into until after the plaintiff's authority was revoked, the plaintiff can only recover a commission if Helen Phillips was one "to whom the property was offered during the period hereof." The plaintiff has the burden of establishing that he is entitled to a commission (5 Ill. L. & Prac. *Brokers* §103 (1953); *Katz v. Brooks* (1965), 65 Ill. App. 2d 155, 212 N.E.2d 508; *MacCarthy v. Skelcher* (1970), 125 Ill. App. 2d 409, 261 N.E.2d 544, *appeal denied* (1970), 44 Ill. 2d 587), and equally, in moving for a summary judgment, he had the burden of establishing that his right to a commission was so clear that he was entitled to judgment as a matter of law and that there was no relevant question of fact. (*Lundin v. Egyptian Construction Co.* (1975), 29 Ill. App. 3d 1060, 331 N.E.2d 208; *Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444; *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29; *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 340 N.E.2d 539; *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 199 N.E.2d 300 *appeal denied* (1964), 30 Ill. 2d 627; *Tezak v. Cooper* (1960), 24 Ill. App. 2d 356, 164 N.E.2d 493; 23 Ill. L. & Prac. *Judgments* §77 (1956).) This burden the plaintiff has not carried for the simple reason that it has not been established that Helen Phillips had been offered the property during the lifetime of the listing agreement with the plaintiff.

■■■ Not only is it not established that Helen Phillips was offered the property during the lifetime of the listing agreement, but also it is not clear that even if some sort of offer was made during the lifetime of the listing agreement, the plaintiff is entitled under Clause III to a commission since the original offer to Helen Phillips was made prior to November 10, 1975. The clause recites that the plaintiff is only entitled to a commission if the purchaser was one to whom the property was offered during the lifetime of the listing agreement. It is not clear from the language whether a continuing offer or a renewed offer would constitute such an offer. Certainly a counteroffer by the subsequent purchase would not. Furthermore, reading the contract as a whole, it is not clear whether Clause III was meant to apply if the purchaser was not procured by the plaintiff. The clause merely says that the property must have been offered, but unlike Clause II where it is expressly provided that a commission is due even though the owner or some other person procures the purchaser, Clause III is silent on this point. One could conclude from this silence that a lesser degree of protection was intended for the plaintiff once his right to sell the property had been revoked. Indeed, it would be reasonable to assume that his protection during the listing period would be greater than during a period following the termination of the agreement. During the period of the listing, he is presumably working for the owner, trying to procure a purchaser, and the contract protects these efforts against competition by the owner or some other person. But once his authority is revoked, he is no longer working for the owner, and the only reasonable purpose of such a provision would seem to be to protect him from losing a commission where the sale was really due to his own past efforts. Following this reasoning, Clause III would not apply to a situation where the purchaser was in no way procured by the broker.

■■ Since, for the reasons discussed, it is not clear that the plaintiff is entitled to a commission, the trial court's decision must be reversed and the case remanded for trial. If it develops that the contract of sale was not entered into until after the termination of the plaintiff's listing agreement, then, since it is not clear from the language of the contract whether it was meant to apply to a situation where a person who had been offered the property before November 10, 1975, finally decided to purchase it, parol evidence as to antecedent agreements, communications and other factors, which may help to decide the issue may be admitted at trial. (*Farnsworth v. Lamb* (1972), 6 Ill. App. 3d 785, 286 N.E.2d 74; *Roy Annett, Inc. v. Killin* (1961), 365 Mich. 389, 112 N.W.2d 497; *Rivadell, Inc. v. Razo* (1963), 215 Cal. App. 2d 614, 30 Cal. Rptr. 622; *Neece v. A.A.A. Realty Co.* (Tex. 1959), 322 S.W.2d 597.) If, after such evidence has been introduced and other aids to construction applied, the contract still

remains unclear, then it must be construed against the plaintiff who drafted it. 12 Am. Jur. 2d *Brokers* §33 (1964).

For the foregoing reasons, we reverse the trial court's granting of the plaintiff's motion for summary judgment and remand for further proceedings.

Reversed and remanded.

JOHNSON, P. J., and LINN, J., concur.