**James W. SCHACHT, Acting Director of Insurance of the State of Illinois, as Liquidator of Kenilworth Insurance Company, Plaintiff-Counter-Defendant-Appellee,**

v.

**BEACON INSURANCE COMPANY, Defendant-Counter-Plaintiff-Appellant.**

No. 83–1934.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1984.

Decided Aug. 29, 1984.

Gerald B. Mullin, Epton, Mullin, Segal & Durth, Ltd., Chicago, Ill., for plaintiff-counter-defendant-appellee.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for defendant-counter-plaintiff-appellant.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.[*]

PELL, Circuit Judge.

Appellant, Beacon Insurance Company, defendant-counter-plaintiff below, appeals from a district court order that granted appellee's motion to strike appellant's defenses, ordered the parties to arbitrate, and dismissed the case. Plaintiff-counter-defendant-appellee is the Director of Insurance of Illinois, who brought suit as the liquidator of Kenilworth Insurance Company pursuant to a contract between Kenilworth and appellant. Appellant raises three issues on appeal. First, appellant claims error in the district court's order of arbitration because, allegedly, Kenilworth fraudulently induced appellant to agree to the arbitration clause in the contract. Second, appellant maintains that the arbitration clause is not sufficiently broad to empower the arbitrators to resolve the issues raised in this case. Finally, appellant alleges that the district court erred when it excluded parol evidence of what appellant contends is a fraudulent condition precedent to the existence of the contract.

## I. THE FACTS

On December 10, 1981, appellant and Kenilworth entered into a written agreement of reinsurance whereby appellant would reinsure against losses arising from any of Kenilworth's automobile policies, retroactive to September 30, 1981. The

---

[*] William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

contract, consisting of an "Agreement of Reinsurance" and "amendments," contained a wide variety of provisions, only four of which are relevant to this case. The provision that delineated the premiums due from Kenilworth to appellant read, in part, as follows:

> The Company shall pay to the Reinsurer ... with respect to business in force at the effective time and date of this Exhibit, 90% of the unearned portion of the Company's net retained premiums for all losses of business reinsured hereunder; 90 days after inception in 10 successive monthly segments net of offsets.

The termination clause stated, in part:

> The Reinsurer may terminate this Exhibit in its entirety by sending to the Company by registered mail to its principal office, notice stating the time and date when, not less than 180 days after the date of mailing of such notice, termination shall be effective. In such instance, the liability of the Reinsurer with respect to policies in effect at the time and date of termination shall continue until cancellation or expriation [sic] or next anniversary of each such policy, whichever comes first.

Additionally, the agreement contained the following arbitration clause:

> Should any difference of opinion arise between the Reinsurer and the Company which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties under this Agreement, the difference shall be submitted to arbitration.
>
> ....
>
> The arbitrators and umpire shall be officials of insurance or reinsurance companies authorized to transact business in one or more states of the United States of America and writing the kind of business about which the difference has arisen. The arbitrators and umpire are relieved from all judicial formalities and may abstain from following the strict rules of law and they shall make their

award with a view to effecting the general purpose of this Agreement rather than in accordance with the literal interpretation of the language, and the decision of the majority shall be final and binding upon the parties.

Finally, the integration clause stated: "That the Agreement of Reinsurance ... and this Amendment constitutes [sic] the entire agreement of Reinsurance between the parties thereto."

On January 7, 1982, appellant sent Kenilworth a letter alleging that Kenilworth owed $1,080,000 as an advance premium and threatening to terminate the contract "at inception" if Kenilworth failed to pay. On January 15, appellant sent a notice of cancellation of the agreement "effective back to inception for nonpayment of premium and failure of your company to act in good faith in fulfilling the verbal inducements used to get us to sign the aforementioned treaty." Four days later, Kenilworth responded, noting the failure of appellant to comply with the contractual provision for a 180-day advance notice of termination and concluding that "this Company has made no verbal inducements on the above mentioned treaty. This treaty stands as written."

On January 28, 1982, Kenilworth sent to appellant an accounting for the first month of coverage. The accounting indicated that appellant owed $271,023 to Kenilworth. Appellant rejected the accounting and refused to pay the claim. Kenilworth requested arbitration of the disputed claim, but appellant refused, claiming that the contract was void at inception and, therefore, appellant had no obligation to arbitrate. On April 20, 1982, an Illinois trial court entered an order of liquidation of Kenilworth, based upon its insolvency. On June 29, 1982, appellee, as liquidator of Kenilworth, filed a complaint for declaratory relief and an order to compel arbitration. In its answer, appellant asserted that there had been a contemporaneous oral agreement that Kenilworth was to pay $1,080,000 by December 18, 1981, or else the contract would never come into existence.

Consequently, appellant interposed two defenses to appellee's complaint: first, Kenilworth's failure to perform the alleged condition precedent; and, second, that Kenilworth fraudulently induced appellant to enter the contract by orally promising to pay the advance premium. Appellant alleged in its answer, and continues to allege, that, since either of the defenses would mean that a valid contract never existed, the arbitration clause has no force. Appellant also counterclaimed for payment of the advance premium.

Appellee moved to strike the pleaded defenses, and appellant filed a responsive memorandum. The district court granted the liquidator's motion. The court rejected appellant's condition precedent argument on parol evidence grounds: since the contract was plain and unambiguous and contained an integration clause, the court held that it could not hear evidence related to the alleged condition precedent. As to appellant's fraudulent inducement defense, the district court found that, since the alleged fraud concerned the entire contract, the Supreme Court decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), compelled it to refer the dispute about fraudulent inducement to the arbitrator. Therefore, the court struck appellant's defenses, ordered arbitration, and dismissed the complaint.

## II. ARBITRABILITY

### A. Fraud in the Inducement

Analysis of appellant's claim that Kenilworth's fraudulent inducement precludes arbitration must begin with *Prima Paint*. In *Prima Paint*, an integrated contract between the parties included an arbitration clause covering "[a]ny controversy or claim arising out of or relating to this Agreement." Prima Paint sought to resist arbitration, claiming that the entire agreement was induced by fraud. Flood & Conklin asserted that the issue of fraudulent inducement was for the arbitrators to decide, and the Court agreed. The Court noted that section 4 of the United States Arbitra-

tion Act of 1925, 9 U.S.C. § 4, provides that a federal court must order arbitration "once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.'" *Id.* at 403, 87 S.Ct. at 1806, *quoting* 9 U.S.C. § 4. The Court reasoned that

> if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement generally .... [A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Id.* at 403–04, 87 S.Ct. at 1805–06 (footnote omitted). The Court then concluded that the scope of the arbitration clause

> is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud. Indeed, no claim is made that Prima Paint ever intended that "legal" issues relating to the contract be excluded from arbitration, or that it was not entirely free so to contract.

*Id.* at 406, 87 S.Ct. at 1807. In our most recent statement about *Prima Paint*, we noted that only when the claimed contractual invalidity goes to the arbitration clause itself does the court determine the existence of a contractual provision: "Where the claim of invalidity goes to the entire contract containing the agreement to arbitrate, ... [t]he issue is for an arbitrator to decide." *Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629, 630 n. 3 (7th Cir.1984).

■ Appellant attempts to avoid the application of *Prima Paint* by alleging that the fraud in the inducement on the part of Kenilworth went to the arbitration clause. Yet, in another part of its brief, appellant concedes: "The failure of the condition precedent, in and of itself, raised an issue as to the making of the entire agreement, not just the arbitration clause." Appellant

nowhere contends that the alleged fraud in the inducement applied *solely* to the arbitration clause. Its claim of fraud applies equally to all provisions of the contract. Thus, if the clause is sufficiently broad to encompass a claim of fraud in the inducement, the district court properly concluded that *Prima Paint* precludes the court from addressing that claim.

■ Appellant also maintains that, due to the failure of Kenilworth to fulfill the alleged condition precedent, no contractual relationship ever existed and the arbitrators would have no jurisdiction to arbitrate any issue arising out of the parties' disagreement. It is true, as appellant asserts, that there can be no enforceable arbitration clause without a contractual relationship between the parties. *Interocean Shipping v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir.1972); *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211 (S.D.N.Y.1978). In the first case cited by appellant in support of this proposition, however, the parties disputed whether there had ever been a meeting of the minds. Thus, the issue of the existence of a meeting of the minds and the formation of a contract required a hearing prior to any order compelling arbitration. *Interocean Shipping v. National Shipping & Trading Corp.*, 462 F.2d at 677. In *Pollux Marine,* on the other hand, the court noted that fraud in the inducement "affects only the validity, legality or enforceability of a contract; it does not negate the existence of a contract ...." *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. at 218. Consequently, the court ordered arbitration.

■ Similarly, appellant cannot seriously deny that a contractual relationship ever existed between itself and Kenilworth. There was a signed, integrated contract. The claimed failure of a condition precedent only affects the ability of the liquidator to enforce the provisions of the contract against appellant, as with fraud in the inducement. *Id.* A defense to enforceability of contractual provisions, as opposed to the denial of the existence of any contractual relationship, does not deprive the arbitration clause of its effectiveness. The claims raised by appellant are susceptible to resolution through the arbitral process, again provided that the arbitration clause is sufficiently broad to encompass the claims.

## B. Scope of the Arbitration Clause

■ Appellant next contends that the arbitration agreement contained in the contract does not include within its ambit questions of contract enforceability. Appellant correctly maintains that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Yet, in the *Steelworkers* case, the Supreme Court went on to state: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 582–83, 80 S.Ct. at 1353 (footnote omitted).

While the statutory authority in the *Steelworkers* case was section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), we have extended the same presumptions in favor of arbitration to commercial contracts outside the labor field, such as the one involved in this case. *National Railroad Passenger Corp. v. Chesapeake & Ohio Railway*, 551 F.2d 136, 140 (7th Cir.1977). We noted, *id.*, the limited nature of the judicial inquiry into questions about the scope of arbitration clauses by again quoting from the *Steelworkers* case: With a broad arbitration clause covering all disputes involving contract interpretation, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail ...." *Steelworkers*, 363 U.S. at 584–85, 80 S.Ct. at 1353–54.

■ With this background in mind, we examine the express terms of the arbitration clause in the contract between appellant and Kenilworth:

Should any difference of opinion arise ... which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties under this Agreement, the difference shall be submitted to arbitration.

Appellant maintains that the clause only applies to *disputes* that arise in the normal course of business. The liquidator counters with the assertion that the clause applies to any dispute involving contract interpretation and performance, the *resolution* of which the parties cannot achieve "in the normal course of business." While the liquidator's interpretation of the provision seems to us to accord more closely with the contractual language, we need not decide which interpretation is correct. We conclude that the arbitration clause arguably covers the dispute about the alleged condition precedent to pay an advance premium. The dispute about the condition precedent involves questions of interpretation and performance. The parties agreed in their contract to submit such questions to resolution by arbitration. Under the dictates of the *Steelworkers* decision, 363 U.S. at 583, 80 S.Ct. at 1353, our conclusion that the arbitration clause arguably covers the issues herein involved terminates our inquiry.

## III. THE PAROL EVIDENCE RULE

■ Appellant's final claim is that the district court improperly relied upon the parol evidence rule to exclude evidence of the alleged condition precedent that Kenilworth was to pay $1,080,000 before the contract would take effect. Initially, we note that Illinois courts might not agree with appellant's characterization of the alleged condition as a condition precedent. *See, e.g., Feder v. River's Edge Restaurant Inc.*, 59 Ill.App.3d 1015, 1018–19, 17 Ill.Dec. 547, 376 N.E.2d 693, 695 (1978) ("[I]t is well settled that evidence of an oral condition precedent is inadmissible if that condition would contradict the terms of the written contract."); *National Bank & Trust Co. v. Becker*, 38 Ill.App.2d 307, 312, 187 N.E.2d 355, 357 (1962) ("If the condition is extraneous to the unambiguous language of the contract, it may qualify as a condition precedent. If the condition violates the terms of the contract, it is at best a condition subsequent, and parol or extrinsic evidence of a prior or contemporaneous agreement is inadmissible."). The condition alleged by appellant clearly contradicts the combination of the written term that set forth the specific premium payment scale and the integration clause of the contract. Therefore, the alleged condition is nothing more than a condition subsequent, in which case the parol evidence rule was properly applicable.

■ Even if appellant's "condition precedent" label were correct, however, and the evidence was admissible, the district court still would have been correct to compel arbitration. The failure of the alleged condition would raise an issue concerning enforceability of the parties' contractual obligations, an issue arguably covered by the arbitration clause. Therefore, as we have held with respect to the fraudulent inducement argument advanced by appellant, the condition precedent issue would be for the arbitrator to decide. Furthermore, we note that, since the parties agreed that the arbitrators "are relieved from all judicial formalities and may abstain from following the strict rules of law," the arbitrators have the authority to consider appellant's evidence concerning the alleged condition, even though the parol evidence rule precluded the district court from considering the same evidence. Thus, since the order to compel arbitration was proper, any error in the application of the parol evidence rule could have no effect on the order of arbitration.

## IV. CONCLUSION

We have considered all the arguments of appellant and find them to be without mer-

it. Accordingly, the decision of the district court is

AFFIRMED.